PUBLISHED

Filed October 13, 2006

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ROBERT L. JORDAN,
                    *Plaintiff-Appellant,*

v.

ALTERNATIVE RESOURCES
CORPORATION; INTERNATIONAL
BUSINESS MACHINES CORPORATION,
                    *Defendants-Appellees.*

THE METROPOLITAN WASHINGTON
EMPLOYMENT LAWYERS ASSOCIATION;
PUBLIC JUSTICE CENTER; EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION,
                    *Amici Supporting Appellant.*

No. 05-1485
CA-04-1091-8-DKC

## On Petition for Rehearing En Banc

By order filed October 2, 2006, the Court denied appellant's petition for rehearing en banc. A poll requested by a member of the Court failed to produce a majority of judges in active service in favor of rehearing en banc. Chief Judge Wilkins and Judges Michael, Traxler, King, and Gregory voted to rehear the case en banc, and Judges Widener, Wilkinson, Niemeyer, Shedd, and Duncan voted against rehearing en banc.

Judge Niemeyer now files an opinion in support of the order denying rehearing en banc, and Judge King files an opinion, in which Chief Judge Wilkins and Judges Michael, Traxler, and Gregory join, dissenting from the denial of rehearing en banc.

Entered at the direction of Judge Niemeyer for the Court.

For the Court,

/s/ Patricia S. Connor
CLERK

NIEMEYER, Circuit Judge, opinion in support of the court's order denying appellant's motion for rehearing en banc:

The differences that Judge King has with the majority's view of this case have puffed up the writings of all to such a level that they are addressing abstract arguments about the policy ramifications of Title VII's retaliation provisions. The fact remains that this case presents a straightforward and unremarkable legal question: Did Robert Jordan state a Title VII claim against his employer for retaliation against him for complaining about a coworker's single isolated racist remark made not to Jordan himself, but to a television set? While the single racist remark by the fellow employee was an ugly one, not even Jordan alleged that it had created a hostile work environment as defined by Title VII cases. Ruling comfortably within the bounds of the statutory language and existing precedent, the district court dismissed the claim under Federal Rule of Civil Procedure 12(b)(6), and we affirmed.

The complaint alleges that Jordan, while in the network room of his employer's office, heard Jay Farjah, a coworker, who was watching television, exclaim — not directly to Jordan but in his presence — "They should put those two black monkeys in a cage with a bunch of black apes and let the apes f--k them." Farjah was speaking to the television set in response to a report that John Allen Muhammad and Lee Boyd Malvo, the Washington-area terrorists, had been captured. Jordan alleged that he was offended by Farjah's statement and reported it to two other coworkers, who told Jordan that they had heard Farjah make similar offensive remarks many times before. Jordan complained about Farjah's remark to various supervisors, who briefly investigated it.

Jordan's complaint alleges that during the month following his complaints about Farjah's remark, one supervisor delayed his work

shift by two and a half hours and gave him extra work assignments, and another made a derogatory remark toward him at an office Thanksgiving party. He alleged that about a month after he complained, his employer fired him because, as his employer said, he was "disruptive," his position "had come to an end," and, as he was told, his fellow employees and supervisors "don't like you and you don't like them." He alleged that this was a "pretext" and that he was fired "because of his opposition to Farjah's racially offensive remark." The district court concluded that Jordan's allegations did not state a claim for retaliation upon which relief could be granted, because Jordan was not opposing "any practice made an unlawful employment practice by" Title VII. *See* 42 U.S.C. § 2000e-3(a).

Jordan admitted that the single isolated racist comment that he heard did not amount to a practice that was made an unlawful employment practice under Title VII, but he did allege that Title VII *might eventually be* violated because "had [a fellow employee] continued, unabated, his conduct would at some time have ripened into [a] racially hostile work environment."

In *EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005), we held that an employee did have a claim for retaliation if he "reasonably believes" that he was opposing a practice made an unlawful employment practice by Title VII, even if the practice had not yet ripened into a Title VII violation. But the law has never protected employees in connection with their complaints about *potential* or *future* violations that they feared might occur. To adopt now such an extension of the statutory language would trample all existing Title VII jurisprudence that recognizes a difference between an isolated racial slur, which is always and everywhere inappropriate, and the sort of severe or pervasive conduct that creates a hostile work environment. "Title VII does not prohibit all verbal or physical harassment in the workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *see also id.* (Title VII will not become "a general civility code for the American workplace" so long as courts pay "careful attention to the requirements of the statute").

Jordan has argued that the reasonableness standard adopted in *Navy Federal* stands in tension with the early reporting policy incentives discussed in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764

(1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998), and Judge King adopted this argument as his reason for urging an extension of Title VII's retaliation provisions to cover *potential* violations. As we demonstrated in some detail in our panel opinion, however, there is no such tension because Jordan is comparing the qualitative requirement of being objectively reasonable when opposing unlawful practices with the laches concept discussed in *Faragher*. *See Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 341-43 (4th Cir. 2006). Complaining employees are protected by Title VII once they have an *objectively reasonable belief* that a Title VII violation has occurred. On the other hand, if they want to protect their right to sue their employers, they have a reasonable amount of time in which to bring their concern to their employer's attention. These principles are not in tension with each other — they are simply different provisions with different conditions. Congress limited the scope of retaliation claims, and our decision in *Navy Federal* amply protects employees who reasonably err in understanding those limits. We have simply indicated our unwillingness to go beyond *Navy Federal* and use Title VII to create a national workplace civility code.

As the law stands, Title VII does not create a claim for every employee who complains about the potential for Title VII violations or about other employees' isolated racial slurs. It protects an employee who opposes "any practice made an unlawful employment practice," 42 U.S.C. § 2000e-3(a), or who "reasonably believes" he is opposing a practice made an unlawful practice by Title VII, *Navy Federal*, 424 F.3d at 406.

Of course nothing in our ruling condones the contemptible comment made by the coworker in this case. We have simply held that complaining about an isolated racial slur is not opposition protected by Title VII.

On the § 1981 discrimination claim, the issue is not whether Jordan's complaint is too spare to satisfy notice pleading, as Judge King frames the issue. Neither we nor the district court held it to be too spare. The issue is whether Jordan's pleading states a claim upon which relief can be granted. Jordan's detailed complaint for § 1981 discrimination is that his employer fired him because of "his opposition to [a fellow employee's] racially offensive statement." The dis-

trict court said that this did not state a § 1981 claim for discrimination, even if Jordan alleged in a conclusory manner that it amounted to discrimination, because Jordan failed to demonstrate any basis from which to conclude that his *own race* "played any role in his termination." The court observed that the only person alleged to have engaged in racist conduct was the fellow employee, and the fellow employee was "not alleged to have contributed to Jordan's termination." We have affirmed the district court on this same reasoning.

For these reasons, this case merits no analysis further than the careful and thorough analysis already applied by both the majority and dissenting opinions.

KING, Circuit Judge, dissenting from denial of rehearing en banc:

I write to briefly memorialize my profound disappointment with our Court's decision to deny Jordan's petition for rehearing en banc — by a tie vote of five to five.[1] Although Jordan's petition has been denied, his contentions in this appeal have substantial merit, and they warrant serious consideration by the Supreme Court. As explained herein and in more detail in my earlier dissenting opinion, *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 349-59 (4th Cir. 2006) (King, J., dissenting), I disagree with my friends in the panel majority on two issues of exceptional importance.

First, the panel majority's denial of Jordan's Title VII retaliation claim is contrary to Supreme Court precedent established by *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006). The Court, in *Ellerth* and *Faragher*, commanded that an employee who has expe-

---

[1]Pursuant to Rule 35(a) of the Federal Rules of Appellate Procedure, a majority of the qualified active judges must vote in the affirmative in order for rehearing en banc to be granted. Our 5-5 vote has failed that test, and I have no quarrel with the Rule itself. However, I strongly believe that rehearing en banc should have been granted because (1) it was "necessary to . . . maintain uniformity of this court's decisions" and (2) Jordan's appeal involved questions "of exceptional importance." Fed. R. App. P. 35(a).

rienced racially charged conduct must report such conduct as soon as it is practicable to do so under his employer's complaint procedure. *See Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266-67, 269 (4th Cir. 2001) (citing *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807). By its opinion, the panel majority has concluded that, when an employee complies with *Ellerth* and *Faragher* in promptly reporting racially charged conduct, he is stripped of his protection from retaliation under Title VII.[2] Such a construction of Title VII, which penalizes an employee for complying with the controlling mandate of *Ellerth* and *Faragher*, is inconsistent with the Court's view of Title VII. In its recent *White* decision, the Court instructed that we must construe Title VII's anti-retaliation provision broadly, so as to further "the . . . provision's primary purpose" of "maintaining unfettered access to statutory remedial mechanisms." *White*, 126 S. Ct. at 2414 (2006). Nevertheless, the panel majority, without addressing *White*'s holding, has construed Title VII's anti-retaliation provision so narrowly that most employees who seek its protection will have their access to statutory remedial mechanisms either fettered or barred altogether. Our Court has thereby created an untenable Catch-22 situation for such employees.

Second, the panel majority's Rule 12(b)(6) ruling on Jordan's § 1981 claim contravenes controlling Supreme Court precedent in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002). The Court there concluded that Swierkiewicz's bare allegation that an adverse employment action was taken "on account of" a prohibited ground was sufficient, under Rule 12(b)(6), to state a claim upon which relief

---

[2]The circumstances of Jordan's report of racially charged conduct to his employers bear noting. In October 2002, Jordan and a white co-worker were watching a televised report on the capture of snipers who had terrorized the Washington, D.C. area that fall. As they watched, the co-worker loudly stated his position that "[t]hey should put those two black monkeys in a cage with a bunch of black apes and let the apes fuck them." Amend. Compl. ¶ 9. After learning from certain colleagues that this co-worker had made similar offensive comments many times before, Jordan advised several of his managers of the "black monkeys" comment, in accordance with his employers' anti-discrimination policies. Jordan was terminated shortly thereafter, for having reported the foregoing.

can be granted. *See* 534 U.S. at 514. In so ruling, the Court expressly rejected the contention that Swierkiewicz's complaint did not state a valid claim because it was "based on conclusory allegations of discrimination." *Id.* The panel majority has nevertheless ruled that Jordan's allegation (that he was fired "because he is African-American" and that his "race was a motivating factor," Amend. Compl. ¶ 42) fails to state a claim upon which relief can be granted, even though Jordan's allegation is materially indistinguishable from the allegation at issue in *Swierkiewicz*. To make matters worse, the majority based its Rule 12(b)(6) ruling on the very reason rejected by the Court in *Swierkiewicz*: that Jordan's complaint "rested on his illogical conclusory statement that his race was a 'motivating factor' for his firing." *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 345 (4th Cir. 2006). This result simply cannot be reconciled with the Court's decision in *Swierkiewicz*.

In sum, the decision of the panel majority has disregarded important Supreme Court precedent in its disposition of Jordan's Title VII retaliation claim and his § 1981 claim.[3] These rulings present issues of exceptional importance to the workers and employers of this Circuit and this country, not only because of the discord the majority has sown in our Title VII and § 1981 jurisprudence, but also because of the judicial overreaching that its decision represents. In forcing

---

[3]In addition to disregarding precedent, the panel majority has ignored critical allegations in Jordan's complaint, in contravention of Rule 12(b)(6) principles. This flaw in the majority's decision is underscored by the opinion in support of denial of rehearing en banc, which contains errors on the factual predicate of this appeal, including the following.

- Although the opinion acknowledges that Jordan's co-worker made similar offensive remarks before spewing out the "black monkeys" comment, it refers multiple times to the "black monkeys" comment as a single, isolated racial slur.

- On his § 1981 claim, Jordan does not simply allege that "his employer fired him because of 'his opposition to [a fellow employee's] racially offensive statement.'" *Ante* at 4. Significantly, Jordan asserts that he was fired "because he is African-American," and that his "race was a motivating factor in the conduct and decisions of" his employers. Amend. Compl. ¶ 42.

employees to choose between hostile work environment claims and the protection authorized under Title VII's anti-retaliation provision, the majority has effectively nullified Congress's policy judgment that those safeguards against workplace discrimination should operate concurrently. And, by requiring employees to plead with particularity their claims of employment discrimination, the panel majority has arrogated to our Court the power to overrule, *sub silentio*, the liberal pleading standard of Rule 8(a) in favor of our own notions of effective procedure. *Cf. Swierkiewicz*, 534 U.S. at 515 ("A requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993))).

I must therefore, with all respect, dissent from the denial of Jordan's petition for rehearing en banc, and I urge the Supreme Court to accord serious consideration to any petition for certiorari that Jordan may file.

I am authorized and pleased to state that Chief Judge Wilkins, Judge Michael, Judge Traxler, and Judge Gregory join in this opinion.