KING, Circuit Judge,
dissenting from denial of rehearing en banc:
I write to briefly memorialize my profound disappointment with our Court’s decision to deny Jordan’s petition for rehearing en banc — by a tie vote of five to five.[1] Although Jordan’s petition has been denied, his contentions in this appeal have substantial merit, and they warrant serious consideration by the Supreme Court. As explained herein and in more detail in my earlier dissenting opinion, Jordan v. Alternative Resources Corp., 458 F.3d 332, 349-59 (4th Cir.2006) (King, J., dissenting), I disagree with my friends in the panel majority on two issues of exceptional importance.
First, the panel majority’s denial of Jordan’s Title VII retaliation claim is contrary to Supreme Court precedent established by Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and Burlington Northern & Santa Fe Railway Co. v. White, — U.S. —, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The Court, in Ellerth and Faragher, commanded that an employee who has experienced racially charged conduct must report such conduct as soon as it is practicable to do so under his employer’s complaint procedure. See Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 266-67, 269 (4th Cir.2001) (citing Ellerth, 524 U.S. at 765, 118 S.Ct. 2257; Faragher, 524 U.S. at 807, 118 S.Ct. 2275). By its opinion, the panel majority has concluded that, when an employee complies with El-lerth and Faragher in promptly reporting racially charged conduct, he is stripped of his protection from retaliation under Title VII.[2] Such a construction of Title VII, which penalizes an employee for complying with the controlling mandate of Ellerth and Faragher, is inconsistent with the Court’s view of Title VII. In its recent White decision, the Court instructed that we must construe Title VII’s anti-retaliation provision broadly, so as to further “the ... provision’s primary purpose” of “maintaining unfettered access to statutory remedial mechanisms.” White, 126 S.Ct. at 2414 (2006). Nevertheless, the panel majority, without addressing White’s holding, has construed Title VII’s anti-retaliation provision so narrowly that most employees who seek its protection will have their access to statutory remedial mechanisms either fettered or barred alto *382 gether. Our Court has thereby created an untenable Catch-22 situation for such employees.
Second, the panel majority’s Rule 12(b)(6) ruling on Jordan’s § 1981 claim contravenes controlling Supreme Court precedent in Swierkiewicz v. Sorema N. A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The Court there concluded that Swierkiewicz’s bare allegation that an adverse employment action was taken “on account of’ a prohibited ground was sufficient, under Rule 12(b)(6), to state a claim upon which relief can be granted. See 534 U.S. at 514, 122 S.Ct. 992. In so ruling, the Court expressly rejected the contention that Swierkiewicz’s complaint did not state a valid claim because it was “based on conclusory allegations of discrimination.” Id. The panel majority has nevertheless ruled that Jordan’s allegation (that he was fired “because he is African-American” and that his “race was a motivating factor,” Amend. Compl. ¶ 42) fails to state a claim upon which relief can be granted, even though Jordan’s allegation is materially indistinguishable from the allegation at issue in Swierkiewicz. To make matters worse, the majority based its Rule 12(b)(6) ruling on the very reason rejected by the Court in Swierkiewicz: that Jordan’s complaint “rested on his illogical con-clusory statement that his race was a ‘motivating factor’ for his firing.” Jordan v. Alternative Resources Corp., 458 F.3d 332, 345 (4th Cir.2006). This result simply ean-not be reconciled with the Court’s decision in Swierkiewicz.
In sum, the decision of the panel majority has disregarded important Supreme Court precedent in its disposition of Jordan’s Title VII retaliation claim and his § 1981 claim.[3] These rulings present issues of exceptional importance to the workers and employers of this Circuit and this country, not only because of the discord the majority has sown in our Title VII and § 1981 jurisprudence, but also because of the judicial overreaching that its decision represents. In forcing employees to choose between hostile work environment claims and the protection authorized under Title VII’s anti-retaliation provision, the majority has effectively nullified Congress’s policy judgment that those safeguards against workplace discrimination should operate concurrently. And, by requiring employees to plead with particularity their claims of employment discrimination, the panel majority has arrogated to our Court the power to overrule, sub silentio, the liberal pleading standard of Rule 8(a) in favor of our own notions of effective procedure. Cf. Swierkiewicz, 534 U.S. at 515, 122 S.Ct. 992 (“A requirement of greater specificity for particular claims is a result that ‘must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.’ ” (quoting Leatherman v. Tarrant County Narcotics Intelligence & *383 Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160,122 L.Ed.2d 517 (1993))).
I must therefore, with all respect, dissent from the denial of Jordan’s petition for rehearing en banc, and I urge the Supreme Court to accord serious consideration to any petition for certiorari that Jordan may file.
I am authorized and pleased to state that Chief Judge Wilkins, Judge Michael, Judge Trader, and Judge Gregory join in this opinion.

. Pursuant to Rule 35(a) of the Federal Rules of Appellate Procedure, a majority of the qualified active judges must vote in the affirmative in order for rehearing en banc to be granted. Our 5-5 vote has failed that test, and I have no quarrel with the Rule itself. However, I strongly believe that rehearing en banc should have been granted because (1) it was "necessary to ... maintain uniformity of this court’s decisions” and (2) Jordan’s appeal involved questions "of exceptional importance.” Fed. R.App. P. 35(a).

. The circumstances of Jordan's report of racially charged conduct to his employers bear noting. In October 2002, Jordan and a white coworker were watching a televised report on the capture of snipers who had terrorized the Washington, D.C. area that fall. As they watched, the co-worker loudly stated his position that "[t]hey should put those two black monkeys in a cage with a bunch of black apes and let the apes fuck them.” Amend. Compl. ¶ 9. After learning from certain colleagues that this co-worker had made similar offensive comments many times before, Jordan advised several of his managers of the "black monkeys” comment, in accordance with his employers' anti-discrimination policies. Jordan was terminated shortly thereafter, for having reported the foregoing.

. In addition to disregarding precedent, the panel majority has ignored critical allegations in Jordan’s complaint, in contravention of Rule 12(b)(6) principles. This flaw in the majority’s decision is underscored by the opinion in support of denial of rehearing en banc, which contains errors on the factual predicate of this appeal, including the following.
• Although the opinion acknowledges that Jordan's co-worker made similar offensive remarks before spewing out the "black monkeys” comment, it refers multiple times to the "black monkeys” comment as a single, isolated racial slur.
• On his § 1981 claim, Jordan does not simply allege that "his employer fired him because of 'his opposition to [a fellow employee's] racially offensive statement.’ ” Ante at 380. Significantly, Jordan asserts that he was fired "because he is African-American,” and that his "race was a motivating factor in the conduct and decisions of” his employers. Amend. Compl. ¶ 42.