**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellant,**

v.

**R&R VENTURES, d/b/a Taco Bell, Defendant–Appellee.**

**No. 00–1702.**

United States Court of Appeals, Fourth Circuit.

Argued: Jan. 23, 2001.

Decided: March 23, 2001.

336

**ARGUED:** Julie Loraine Gantz, Equal Employment Opportunity Commission, Washington, DC, for Appellant. Paul Joseph Weber, Hyatt, Peters & Weber, L.L.P., Annapolis, MD, for Appellee. **ON BRIEF:** C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Equal Employment Opportunity Commission, Washington, DC, for Appellant. Christopher D. Buck, Buck, Migdal & Meyers, Chartered, Annapolis, MD, for Appellee.

Before WILKINSON, Chief Judge, and WILKINS and KING, Circuit Judges.

Reversed and remanded by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge WILKINS and Judge KING joined.

## OPINION

WILKINSON, Chief Judge:

The Equal Employment Opportunity Commission (EEOC) brought this suit against R&R Ventures, owner of the Severna Park, Maryland Taco Bell. The EEOC alleges that Edwin Wheeler, a former manager of the restaurant, sexually harassed various female employees. The district court held that Wheeler's conduct was not severe enough to create a triable issue of sexual harassment. We reverse.

### I.

Edwin Wheeler used to manage the Severna Park Taco Bell for R&R Ventures. Shelby Scott and Brandyn Potter worked as entry-level employees under Wheeler. R&R claims that Wheeler was a difficult manager who abused male and female employees alike. The EEOC claims, however, that Wheeler singled out his female subordinates for especially cruel treatment and that this constituted sexual harassment. For purposes of summary judgment, we shall address the facts in the light most favorable to the EEOC as the non-prevailing party.

Shelby Scott was one of Wheeler's victims. She was only fifteen when she started work at the Severna Park Taco Bell. Scott claims that Wheeler made sexual jokes on a daily basis and that he frequently discussed sexual positions and experiences. When Scott bent over, Wheeler told her she was giving him a "cheap thrill." He commented regularly about the size of her buttocks and breasts. He repeatedly asked Scott if she liked to be spanked. He also frequently said that women were stupid as compared to men. Wheeler made these comments every time he worked with Scott, often in front of other employees. Because of Wheeler's comments, Scott suffered an eating disorder and lost a significant amount of weight in an effort to avoid attracting attention to her body.

Although Scott repeatedly asked Wheeler to stop making sexual comments, he persisted. He did so even though Scott became visibly upset. Ultimately, Scott buckled under the pressure and resigned in June of 1996. When she resumed working at Taco Bell in August of 1996, Wheeler began harassing her again. Scott complained about Wheeler's conduct to three other managers at her store, none of whom took any action. This prompted Scott's mother to lodge several complaints with Mike Lee, then R&R's Area Manager. Lee did not return any of her calls. Another R&R employee, however, investigated the claims by interviewing five or six female employees who worked for Wheeler. Neither Scott nor Wheeler were interviewed as a part of this investigation and no disciplinary action resulted.

On October 27, 1996, after Scott and her mother had complained to Lee, Scott arrived early to work. Wheeler screamed at Scott, reducing her to tears, because of her early arrival. As Scott was leaving, one of the other managers told her to take the rest of the day off. When she did, Wheeler suspended her for two weeks. Scott was never returned to the work schedule. Scott filed a charge of discrimination with the EEOC on February 10, 1997. On February 18, the EEOC served notice of the charge on R&R ventures.

About the same time Scott filed her charge with the EEOC, Brandyn Potter began working at the store. Potter was twenty when she started working with Wheeler. Wheeler flirted with Potter and repeatedly made sexual comments in her presence. For example, Wheeler inquired about the size of Potter's pants and complained to her about how long it had been since he had engaged in sex. Wheeler also belittled Potter in front of others, telling her she was stupid. Wheeler behaved this way every time the two worked together.

Potter cried every morning at the thought of having to work with Wheeler and frequently left in tears on account of his verbal assaults.

As did Scott, Potter complained to Wheeler and asked him to stop. She also complained to another manager, Tammy Hartley, who told Potter that she was overreacting. When she decided to complain to R&R's higher management, none of the managers would give her Mike Lee's phone number. After two weeks, however, Potter obtained the number and called Lee to complain.

Lee responded by offering to move Potter to the Crofton Taco Bell while he worked out the details of transferring Wheeler. Since the Crofton assignment could not take place immediately, Lee told Potter to take a week off so she would not have to work with Wheeler. During her week off, however, Hartley called Potter and told her she would be fired if she did not come to work. When Potter arrived at the store, Wheeler confronted her. He screamed at Potter, saying that she "had no [expletive deleted] right to go to my boss and complain" and that she was a bitch. Potter left immediately and did not return until Wheeler had been transferred. When she returned, however, R&R management reduced her hours so much that she quit and found another job.

On March 30, 1999, the EEOC filed this suit. The complaint alleged that R&R was liable for a hostile working environment. The complaint also alleged that R&R retaliated against Scott and Potter for objecting to Wheeler's behavior. After discovery, the district court granted R&R's motion for summary judgment. It ruled that the alleged misconduct was not sufficiently severe or pervasive to create a

hostile work environment. According to the district court, this case was "about a crude supervisor who made the life of his subordinates miserable," but whose conduct failed to rise to the level of a Title VII violation. The district court also held that there was insufficient evidence to establish a *prima facie* case of retaliation. The EEOC now appeals.

## II.

Title VII prohibits employers from, *inter alia,* discriminating against an employee based on sex with respect to the terms, conditions, or privileges of employment. 42 U.S.C. § 2000e–2(a)(1). Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In order to succeed on a claim of hostile workplace harassment, the EEOC must prove the following: (1) the harassment was because of sex; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. *Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 772 (4th Cir.1997). Since the EEOC seeks here to reverse a grant of summary judgment, it must establish a material dispute of fact with respect to each of the four requirements.*

## A.

R&R first claims that Wheeler's harassment of his female employees was not because of sex. Rather, R&R claims that Wheeler was an "equal-opportunity"

---

* The district court erroneously concluded that the complaint was time barred. In a deferral state such as Maryland, a charge is timely if it is filed with the Commission within 300 days of the last alleged act of discrimination and served on the company within ten days of being received by the EEOC. 42 U.S.C. § 2000e–5(e) & (e)(1). Scott's charge was filed on February 10, 1999, 106 days after the last alleged act of discrimination. The EEOC served notice on R&R on February 18, 1999. Because Scott filed a timely charge and because the allegations grew out of a reasonable investigation of that charge, the claims alleged by the EEOC were properly before the district court.

harasser who abused men and women alike. However, the allegations contained in the depositions of Scott and Potter, if proven at trial, would rebut this argument fully. While Wheeler may sometimes have been abusive toward male employees, the allegations indicate that Wheeler directed his sexually pointed comments exclusively to the young women who worked for him. For example, Pedro McKee, a male who worked under Wheeler, testified that only female employees complained about Wheeler's inappropriate sexual comments. Further, Wheeler's repeated close examination of female employees' bodies, his inquiries about pant size, and his repeated references to the size of Scott's buttocks and breasts demonstrates that Wheeler behaved differently towards his female employees. Thus, the evidence indicates Wheeler did more than engage in generally abusive, though non-actionable, behavior. His curiosity and derision were reserved for the young women whom he supervised.

### B.

The second element of a hostile workplace claim is whether the harassment was unwelcome. R&R does not and cannot claim that Wheeler's behavior was welcome.

### C.

◼ The third element focuses on whether the harassment was sufficiently severe or pervasive to create an abusive working environment. As the Supreme Court has explained, "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399. Boorish behavior may exist apart from any propensity to discriminate. Title VII, however, "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Id.* at 65, 106 S.Ct. 2399.

◼ In order to clear the high threshold of actionable harm, the conduct in question must (1) be "severe or pervasive enough to create an objectively hostile or abusive work environment," and (2) be subjectively perceived by the victim to be abusive. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In conducting the objective inquiry, courts should examine "all the circumstances," including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely offensive; and (4) whether it unreasonably interferes with an employee's work performance. *Id.* at 23, 114 S.Ct. 367. In conducting the subjective inquiry we need only look at the testimony of the complaining witnesses. Since we have already concluded that Scott and Potter subjectively perceived the environment to be abusive, *see supra* Section II.B, we shall proceed to the objective inquiry and examine its four components in turn.

R&R argues that the complained of conduct was not frequent and that none of the witnesses could recall more than two incidents of harassment towards them. This is simply not true. Scott claimed that Wheeler harassed her every time they worked together. Specifically, she testified that "every single day" Wheeler would mention "how nice of a butt I had and how much guys would love to just spank me or how much I should try it." Potter too described Wheeler's misconduct as a daily event. She claimed that Wheeler would make daily inquiries into her sex life and made sexual comments and jokes on a daily basis.

R&R also claims that Wheeler's harassment was not sufficiently severe to sustain a hostile work environment claim. In support, R&R points to the absence of any allegations of unwanted touching, overt sexual propositions, or physical threats. One of Scott's complaints, however, was that Wheeler sometimes touched her and brushed up against her. Scott's mother

also claimed to have witnessed Wheeler touching an employee's breasts in an inappropriate fashion.

Even without these allegations, however, R&R's arguments are misplaced as a matter of law. "A work environment consumed by remarks that intimidate, ridicule, and maliciously demean the status of women can create an environment that is as hostile as an environment that contains unwanted sexual advances." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 242 (4th Cir.2000). In this case, Wheeler allegedly described his sex life and discussed sexual positions with Scott and Potter. He regularly asked Scott if she liked to be spanked, if she had "gotten laid," and complained about his lack of sexual prowess. On almost a daily basis he commented on Scott's buttocks and breasts, asked Potter what size pants she wore, and made inappropriate sexual remarks. He made these comments in front of other employees and customers and, in doing so, made his victims uncomfortable and visibly upset. Sometimes he even reduced them to tears. These allegations, if proven, would be more than sufficient to establish that Wheeler created an environment consumed by remarks that ridiculed and demeaned the status of women.

Moreover, the Supreme Court has held that determining "the objective severity of harassment" requires consideration of "all the circumstances," including "the social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances" in order to determine what conduct "a reasonable person in the plaintiff's position would find severely hostile or abusive." *Id.* at 81–82, 118 S.Ct. 998. Here the severity of Wheeler's sexual misconduct was compounded by the context in which it took place. Throughout his campaign of torment, Wheeler was an adult male in a supervisory position over young women barely half his age. And he is alleged to have engaged in a systematic effort to cripple the self-esteem of the teenagers who assisted him at the store. This eclipses the threshold of severity required to defeat summary judgment.

R&R next argues that Wheeler's comments were neither physically threatening nor humiliating, but merely offensive in a manner not prohibited by Title VII. In support, R&R points out that Title VII does not "guarantee freedom from insensitive remarks that do not create an objectively abusive work environment," *Beall v. Abbott Labs.,* 130 F.3d 614, 620–21 (4th Cir.1997), and that "Title VII does not attempt to purge the workplace of vulgarity." *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 753 (4th Cir.1996) (internal quotations omitted). Such maxims, while true, do not allow R&R to escape the import of Wheeler's behavior. The facts as alleged go beyond mere offensiveness. Indeed, the incessant putdowns, innuendos, and leers directed at these young women literally caused them to become sick at the prospect of going to work.

R&R also disputes the claim that Wheeler's harassment unreasonably interfered with any employee's work performance. In support, R&R points out that although Scott quit in June of 1996, she returned in August. According to R&R, the harassment could not have been interfering with her work if she was willing to come back. As was explained in *Harris,* however, the inquiry "is not whether work has been impaired, but whether working conditions have been discriminatorily altered." 510 U.S. at 25, 114 S.Ct. 367 (Scalia, J., concurring). We have no hesitation in concluding that Wheeler's alleged conduct was so severe, especially when considered from his victims' perspective, that it discriminatorily altered their working conditions.

## D.

The fourth element of a hostile work environment claim asks if there is any basis for imputing liability to the employer. R&R claims that as a matter of law, the *Faragher/Ellerth* affirmative defense protects R&R from being held liable for Wheeler's misconduct. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In order to escape liability, R&R must prove that it exercised reasonable care in preventing and promptly correcting any sexually harassing behavior. *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. It also must show that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257.

In this case, Scott and Potter affirmatively sought to bring their complaints about Wheeler to the attention of several different managers. Potter complained both to Tammy Hartley, another Taco Bell manager, and to R&R's area manager, Mike Lee. Scott also complained to three other managers at the store and to Mike Lee. Scott and Potter thus complained at virtually every available opportunity. It therefore cannot be said, as a matter of law, that Scott and Potter failed to take advantage of any corrective opportunities.

What can be said, however, is that R&R management failed to promptly correct Wheeler's harassing behavior. Hartley responded to Potter's complaints by saying that Potter was overreacting. Scott's complaints to the three other managers at the store went similarly unattended. Further, when Scott's mother complained to Mike Lee, R&R failed to interview Scott, failed to interview Wheeler, and took absolutely no corrective action. Under these circumstances, R&R cannot claim as a matter of law that it exercised reasonable care to promptly correct any sexually harassing behavior.

## III.

The EEOC also appeals the grant of summary judgment on the retaliation claim. Title VII prohibits an employer from discriminating against an employee in retaliation for opposing an unlawful employment practice. *See* 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation, the EEOC must prove (1) that Scott and Potter engaged in a protected activity; (2) that R & R took an adverse action against Scott and Potter; and (3) a causal connection between the two. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir.1998). The district court accepted as sufficient EEOC's allegations that R&R took adverse actions against Scott and Potter. It held, however, that the EEOC could not establish that these adverse actions were a result of Scott and Potter's complaints about Wheeler.

We disagree. After complaining, Scott was suspended by Wheeler and never recalled. Potter claims that after she complained, Wheeler told her she "had no [expletive deleted] right to go to my boss" and that she was a bitch. Shortly thereafter, Potter's hours were reduced to the point that she resigned in order to find other employment. The fact that adverse actions followed so closely on the heels of Scott's and Potter's complaints supports their *prima facie* case of retaliation, especially since the decision to suspend Scott and to reduce Potter's hours were made by people who were well aware that they had complained. *Id.* at 444.

These facts certainly require an explanation. *See id.* at 443 (employer can rebut *prima facie* case by articulating legitimate, non-retaliatory reason for its actions). R&R makes no attempt to provide any legitimate reason for why Scott was never

recalled to work. Even the stated reason for her suspension—that she arrived for work too early—raises as many questions as it answers. With respect to Potter, R&R claims that her hours were not reduced, and that if they were, it was because she stopped being a reliable employee. As the EEOC points out, however, this explanation is undermined by the testimony from R&R management that Potter was a good employee who herself was being prepared for a management position.

The above facts raise a genuine dispute on the ultimate question of R&R's retaliatory motive. Summary judgment on the retaliation claim was therefore improper.

## IV.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded with directions that it go to trial.

*REVERSED AND REMANDED.*