Milov M. SONNIER, Plaintiff,

v.

DIAMOND HEALTHCARE CORPORA-
TION and Diamond Healthcare of
Williamsburg, Inc., d/b/a The Pavilion
at Williamsburg Place, Defendants.

Civil Action No. 4:14cv35.

United States District Court,
E.D. Virginia,
Newport News Division.

Signed June 15, 2015.

Verbena M. Askew, for Plaintiff.

Kimberly W. Daniel, for Defendant.

## OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is before the Court on a Motion to Partially Dismiss Amended Complaint, ECF No, 10, filed by Diamond Healthcare Corporation and Diamond Healthcare of Williamsburg, Inc. (collectively, "Defendants"). After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed.R.Civ.P. 78(b); E.D. Va. Loc. R. 7(J).

### I. FACTUAL AND PROCEDURAL HISTORY [1]

Diamond Healthcare Corporation is the parent company of Diamond Healthcare of

---

1. The facts of this case, drawn from the First Amended Complaint, are assumed true for the purpose of deciding the motion currently before the Court. *See Kensington Volunteer Fire* *Dep't v. Montgomery County,* 684 F.3d 462, 467 (4th Cir.2012). The facts recited here are not to be considered factual findings for any

Williamsburg; Inc. First Am. Compl. ¶ 6. Both entities are incorporated under the law of Virginia, and they share the same officers and directors. *Id.* ¶¶ 5–6. Diamond Healthcare of Williamsburg, Inc. does business under the name "The Pavilion at Williamsburg Place." *Id.* ¶ 6.

On September 10, 2012, Milov Sonnier ("Plaintiff" or "Sonnier"), an African–American female, began working for Defendants as a social worker. *Id.* ¶¶ 4, 8. Plaintiff alleges that she was sexually harassed shortly after she began working for Defendants. According to Plaintiff, in the middle of November 2012, Greg Thomas ("Thomas"), another employee of Defendants, first made a "statement of a sexual nature" to Plaintiff when he stated that "she was in his closet." *Id.* ¶ 9. Plaintiff alleges that sometime during November or December, Thomas also told Plaintiff that "you look nice in that blouse." *Id.* ¶ 10. Finally, during that same period, Thomas "leer[ed]" at Plaintiff as she was bending over a chart rack and said to Plaintiff, "[y]ou look nice in those pants." *Id.* at 11.

After Thomas leered at Plaintiff and told her that she "look[ed] nice in those pants," Plaintiff told Thomas that "she did not appreciate his inappropriate comment and asked him to stop." *Id.* ¶ 12. In response, Thomas "stated that he realized his comment was inappropriate and he apologized." *Id.* ¶ 13. In addition to confronting Thomas, that same day, Plaintiff complained to Tom Cino ("Cino"), her supervisor and Defendants' "Social Work Director," about the incident with Thomas and advised Cino that she "was uncomfort-

able with [Thomas]." *Id.* ¶ 14–15. According to Plaintiff, Cino told Plaintiff that he would "discuss the matter with [Plaintiff] later, but never did so." *Id.* ¶ 16.

In February 2013, Defendants transferred Thomas to the Social Work Department; the same department to which Plaintiff was assigned. *Id.* ¶ 17. On February 26, 2013, during a weekly supervision meeting with Cino, Plaintiff again voiced her concerns about Thomas and her discomfort working with him. *Id.* ¶ 18.

On March 4, 2013, Plaintiff contacted Defendants' CEO, Chris Ruble ("Ruble"), but, according to Plaintiff, Ruble referred Plaintiff back to Cino. *Id.* ¶¶ 20–21. The next day, Plaintiff "contacted the ethics hotline and reported the incident with [Thomas] and that [Cino] was unresponsive." *Id.* ¶ 21.

On March 13, 2013, Plaintiff met with Ruble, Cino, and Thomas to discuss the alleged incidents of sexual harassment. *Id.* ¶ 22. Plaintiff alleges that she "was questioned, but [Thomas] was not." *Id.* ¶ 23. Plaintiff alleges that, during March 2013, Cino then retaliated against her in a number of ways.[2] *See id.* ¶¶ 26–32. According to Plaintiff, she informed her supervisor that "she believed she was being retaliated against." *Id.* ¶ 33.

On March 29, 2013, Plaintiff prepared a letter of resignation. *Id.* ¶ 34. On April 2, 2013, Rene Larve, an employee in Defendants' Human Resources department, told Plaintiff that it would be her last day. *Id.* ¶ 35.[3] That day, Plaintiff was escorted from the building. *Id.* ¶ 36. Thomas then

purpose other than consideration of the pending motion.

**2.** Plaintiff alleges various forms of retaliation. Defendants do not seek dismissal of Plaintiff's Title VII cause of action on the basis that Cino's actions did not qualify as retaliation under Title VII. Therefore, the Court need not set forth such allegations.

**3.** The First Amended Complaint also includes allegations concerning Plaintiff's conversation with Rene Larve and Plaintiff's work performance. For the purposes of resolving this motion, the Court need not set forth such allegations because they are not relevant to the issues presented in Defendants' motion.

replaced Plaintiff in her former position as a social worker. *See* ¶¶ 8, 46.

Plaintiff's husband, Gary Sonnier, also worked for Defendants. *Id.* ¶ 56. On November 5, 2013, subsequent to Plaintiff's resignation, he overheard a conversation between Thomas and another employee, "mental health tech Tydell" ("Tydell") after he passed them in the hallway. *Id.* Unbeknownst to Thomas and Tydell, Mr. Sonnier could hear what they were saying from his position in the hallway. *See id.* ¶ 57. Plaintiff alleges that Mr. Sonnier overheard the following conversation. Thomas told Tydell that "[Mr. Sonnier's] wife use[d] to work here." *Id.* ¶ 58. Thomas then "began laughing" and stated "boy I sure tried to get inside of her." *Id.* ¶ 59. According to Plaintiff, that was a reference to Plaintiff. *See id.* Then, Plaintiff alleges, Thomas went on to "boast about inappropriate sexual comments that he made during the time she was employed with the company." *Id.* ¶ 60. Tydell then responded to Thomas's statements, "if I feel that I can get involved with a married woman I would have done the same thing." *Id.* ¶ 61. According to Plaintiff, Thomas and Tydell then laughed "in a man[ner] suggesting that [Thomas] had gotten away with his misconduct involving [Plaintiff]." *Id.* ¶ 62. Thomas allegedly pondered aloud, "I wonder if the brother is taking care of her at home[?]" *Id.* ¶ 63. Tydell responded, "he needs to." *Id.* ¶ 64. Following that statement, Mr. Sonnier walked around the corner so that Thomas and Tydell could see him. *Id.* ¶ 65. Their conversation ceased. *Id.* ¶ 66.

Mr. Sonnier reported the conversation between Thomas and Tydell to Defendants' CEO, Ruble, and to Stephanie Parker, a "Mental Health Tech." *Id.* ¶ 67. However, "Mr. Sonnier did not hear anything from [Defendants] until his resigna-

tion letter was submitted on December 24, 2013." [4] *Id.* ¶ 68.

On March 28, 2014, Plaintiff filed an action in this Court asserting causes of action under the Civil Rights Act of 1866 (42 U.S.C. § 1981) and Title VII of the Civil Rights Act of 1964 ("Title VII"). Complaint, ECF No. 1. In her initial Title VII claim, Plaintiff asserted that Defendants discriminated against her on the basis of her race, African–American, and sex, female. *Id.* ¶ 75. On May 23, 2014, Defendants moved to dismiss portions of Plaintiff's Complaint. In response, Plaintiff filed her First Amended Complaint on June 4, 2014. ECF No. 8. Therein, Plaintiff alleges unlawful discrimination on the basis of race or color under the Civil Rights Act of 1866. *Id.* ¶¶ 71–75. In addition, Plaintiff asserts that Defendants discriminated against her on the basis of her sex, in violation of Title VII, in a number of ways. Under Title VII, Plaintiff asserts causes of action for disparate treatment, harassment, and retaliation. *Id.* ¶¶ 78–80.

On June 16, 2014, Defendants moved to partially dismiss the First Amended Complaint. Defs.' Mot. to Dismiss, ECF No. 10. Defendants contend that Plaintiff has failed to state a claim upon which relief can be granted with respect to her Title VII hostile work environment and retaliation claims. *Id.* at 1. On June 30, 2014, Plaintiff filed her brief in opposition to Defendants' motion. Pl.'s Mem. Opp'n Mot. to Dismiss, ECF No. 12. On July 3, 2014, Defendants filed their reply brief in support of their motion. Defs.' Reply Supp. Mot. to Dismiss, ECF No. 13. However, in such brief, Defendants relied heavily on the Fourth Circuit's May 13, 2014 opinion in *Boyer–Liberto v. Fontainebleau Corp.*, 752 F.3d 350 (4th Cir.2014). Yet, two days *prior to* Defendants' submis-

---

4. In the First Amended Complaint, Plaintiff does not describe the content of Defendants' response to Mr. Sonnier's letter of resignation.

sion of their reply, the Fourth Circuit vacated the *Boyer–Liberto* panel decision and granted rehearing *en banc*. On September 30, 2014, in light of Defendants' reliance on the vacated *Boyer–Liberto* panel opinion, the Court considered it prudent to hold resolution of Defendants' motion in abeyance, pending the Fourth Circuit's *en banc* opinion. Order, ECF No. 14.

On May 7, 2015, after rehearing *en banc*, the Fourth Circuit issued its opinion in *Boyer–Liberto*. *Boyer–Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015) (en banc). By Order of May 11, 2015, the Court directed the parties to file supplemental briefing discussing *Boyer–Liberto* and its effect on the instant motion. ECF No. 15. The parties filed supplemental briefing in accordance with the Court's May 11, 2015 Order. Accordingly, the matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint, or a claim within a complaint, based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), so as to " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (omission in original). The United States Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts for the claim to be "plausible on its face" and thereby "raise a right to relief above the speculative level on the assumption that all the allegations

in the complaint are true (even if doubtful in fact)." *Id.* at 555, 570, 127 S.Ct. 1955 (internal citations omitted). The plausibility requirement is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663, 129 S.Ct. 1937.

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court " 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.' " *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir.2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir.2011)). Accordingly, " 'Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations.' " *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)) (omission in original). A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.' " *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## III. DISCUSSION

Defendants contend that Plaintiff has failed to plead sufficient facts to state a claim upon which relief can be granted as to Plaintiff's Title VII hostile work environment and retaliation claims. The Court will consider, in turn, the sufficiency

of Plaintiff's allegations with respect to each asserted cause of action.

### A. Plaintiff's Hostile Work Environment Claim

First, Defendants argue that Plaintiff has failed to state a hostile work environment claim upon which relief can be granted because Plaintiff has failed to allege sufficient facts to permit the Court to reasonably infer that Thomas subjected Plaintiff to harassing conduct that was objectively severe or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive work environment. More specifically, Defendants contend that Thomas's alleged actions towards Plaintiff were infrequent, isolated incidents—rather than "pervasive" harassment—and involved only benign, non-threatening comments—rather than objectively "severe" harassment. Furthermore, Defendants contend that Plaintiff's allegations regarding the conversation between Thomas and Tydell that occurred subsequent to Plaintiff's resignation do not render Plaintiff's allegations regarding Thomas's conduct objectively severe or pervasive. Finally, Defendants assert that Plaintiff has failed to state a hostile work environment claim upon which relief can be granted even under *Boyer–Liberto.*

■ Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). " 'Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action.' " *Freeman v. Dal–Tile Corp.,* 750 F.3d 413, 420 (4th Cir.2014) (quoting *EEOC v. R & R Ventures,* 244 F.3d 334, 338 (4th Cir. 2001)). To establish a Title VII hostile work environment claim based on sex, a plaintiff must show that "the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Productions, Inc.,* 335 F.3d 325, 331 (4th Cir.2003) (en banc) (citation omitted); *see also Boyer–Liberto,* 786 F.3d at 276–77. Here, Defendants only challenge the sufficiency of Plaintiff's pleading with respect to the third element of a hostile work environment cause of action.

■ "Element three of a hostile work environment claim requires a showing that 'the environment would reasonably be perceived, and is perceived, as hostile or abusive'; the plaintiff may, but is not required to, establish that the environment is 'psychologically injurious.' " *Boyer–Liberto,* 786 F.3d at 277 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). This element has both subjective and objective components. *See Dal–Tile Corp.,* 750 F.3d at 421. "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.' " *Boyer–Liberto,* 786 F.3d at 277 (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). "That determination is made 'by looking at all the circumstances,' which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Id.* (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). Additionally, "the totality of the circumstances includes conduct directed not at the plaintiff." *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 333 (4th Cir.2011). The totality-of-the circumstances standard, however,

" "is not, and by its nature cannot be, a mathematically precise test.' " *Boyer–Liberto,* 786 F.3d at 277 (quoting *Harris,* 510 U.S. at 22, 114 S.Ct. 367). Although "hostile work environment claims often involve repeated conduct," "an 'isolated incident[ ]' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.' " *Id.* at 277 (alteration in original) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). And "[i]n measuring the severity of harassing conduct, the status of the harasser may be a significant factor" because " 'a supervisor's power and authority invests his or her harassing conduct with a particular threatening character.' " *Id.* (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 763, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

▮ That said, Title VII does not impose a "general civility code" on the workplace. *Oncale,* 523 U.S. at 81, 118 S.Ct. 998. "Activities like simple teasing, offhand comments, and off-color jokes, while often regrettable, do not cross the line into actionable misconduct." *EEOC v. Fairbrook Med. Clinic, P.A.,* 609 F.3d 320, 328 (4th Cir.2010) (citing *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275); *see also Vance v. Ball State Univ.,* ⸺ U.S. ⸺, 133 S.Ct. 2434, 2455, 186 L.Ed.2d 565 (2013) (Ginsburg, J., dissenting) (quoting B. Lindemann & D. Kadue, *Sexual Harassment in Employment Law* 175 (1992)) (noting that Title VII "does not reach 'the ordinary tribulations of the workplace,' for example, 'sporadic use of abusive language' or generally boorish conduct.").

In this case, at most, Plaintiff alleges that Thomas sexually harassed her on three occasions. According to Plaintiff, "during the middle of November [2012]" Thomas made his first "statement of a sexual nature" to Plaintiff when he stated to Plaintiff that "she was in his closet."

First Am. Compl. ¶ 9. Plaintiff alleges that sometime during that month or the next month, Thomas further told Plaintiff, "you look nice in that blouse." *Id.* ¶ 10. In the most serious alleged incident of harassment, Plaintiff alleges that, during November 2012 of December 2012, Thomas "was leering at Plaintiff as she was bending over a chart rack and said to Plaintiff, '[y]ou look nice in those pants.' " *Id.* ¶ 11. Additionally, Plaintiff alleges that, subsequent to her resignation from Defendants' employ, Plaintiff's husband overheard a conversation between Thomas and another employee, Tydell, in which Thomas stated "boy I sure tried to get inside of [Plaintiff]," "boast[ed] about inappropriate sexual comments that he made during the time [Plaintiff] was employed with the company," "laugh[ed] in a man[ner] suggesting that [Thomas] had gotten away with ... misconduct involving [Plaintiff]," and stated aloud "I wonder if the brother is taking care of her at home?" *Id.* ¶¶ 59–63. According to Plaintiff, in response, Tydell stated that "he needs to." *Id.* ¶ 64.

Before assessing the sufficiency of Plaintiff's allegations, the Court must consider the extent to which the post-resignation conversation between Thomas and Tydell is probative of whether a reasonable person would perceive Thomas's actions as creating a hostile or abusive work environment. To prevail on a hostile work environment claim, the plaintiff must establish that *she* was subject to an abusive working environment. *Pueschel v. Peters,* 577 F.3d 558, 565–66 (4th Cir.2009). Thus, Thomas's alleged actions that occurred *after Plaintiff resigned* could not have rendered any more or less severe or pervasive any harassment Plaintiff suffered. *See id.*

However, Plaintiff's allegations regarding the Thomas–Tydell conversation arguably are relevant to the Court's assessment of the severity or pervasiveness of the alleged acts of *pre-resignation* harass-

ment. If the Court considered, in isolation, Thomas's alleged statements to Plaintiff that she "was in his closet" and that she "look[ed] nice in that blouse," First Am. Compl. ¶¶ 9–10, the Court would struggle to infer that such statements involved sexual harassment. Notwithstanding Plaintiff's conclusory characterization that it was "of a sexual nature," *id.* ¶ 9, none of Plaintiff's allegations relating directly to Thomas's alleged statement that Plaintiff "was in his closet" indicate that such statement pertained to Plaintiff's sex in any way. Similarly, the bare allegation that "[s]ometime during the month of November and December, [Thomas] told [Plaintiff] 'you look nice in that blouse'" amounts to little more than an innocuous compliment. Yet Plaintiff's allegation that Thomas told Tydell that he "sure tried to get inside of [Plaintiff]" and his "boast[ing] about inappropriate sexual comments that he made during the time [Plaintiff] was employed with the company," *id.* ¶ 59–60, drawing all reasonable inferences in Plaintiff's favor, suggests that Thomas's facially-innocent comments to Plaintiff about his closet and her blouse might have had a sexual connotation. In other words, though the Thomas–Tydell conversation after Plaintiff's resignation could not, as a matter of law, have affected Plaintiff's work environment, the alleged conversation is relevant in the Court's assessment of Plaintiff's allegations regarding the three *pre-resignation* statements because the conversation, if true, renders more reasonable any inference that Thomas's facially-innocuous comments to Plaintiff were, in fact, sexually charged in the context in which Thomas made them. Accordingly, in light of Thomas's alleged boasting to Tydell that he made inappropriate sexual comments to Plaintiff, drawing all reasonable inferences in Plaintiff's

favor, the Court will consider Thomas's statements to Plaintiff that she was "in his closet" and "look[ed] nice in that blouse" to have had at least some sexual implication.

██ Nevertheless, the Court concludes that Plaintiff has failed to allege sufficient facts to permit the Court to reasonably infer that Thomas's actions were sufficiently severe or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive work environment. Assuming the truth of Plaintiff's allegations, the totality of the circumstances indicates that a reasonable person in Plaintiff's position would not have viewed Thomas's actions as hostile or abusive.

The factors that the court reiterated in *Boyer–Liberto* guide the Court's analysis. First, the alleged harassment occurred relatively infrequently-three times during a two-month period. *See, e.g., Overly v. KeyBank Nat'l Ass'n*, 662 F.3d 856, 862–63 (7th Cir.2011) (holding that supervisor referring to the plaintiff as "'cutie' 5 to 10 times over the course of two months" and stating that "[the plaintiff's] and another female co-worker's 'pretty faces' would better represent [the employer] at a golf outing than his 'ugly mug'" was not objectively severe or pervasive conduct); *Singleton v. Dep't of Corr. Educ.*, 115 Fed. Appx. 119, 120, 122 (4th Cir.2004) (unpublished) (finding that the plaintiff had not satisfied the objectively severe or pervasive conduct requirement, despite evidence that, *inter alia*, an employee insistently complimented [the plaintiff]; stared at her breasts when he spoke to her; on one occasion, he measured the length of her skirt to judge its compliance with the prison's dress code and told her that it looked 'real good'; [and] constantly told her how attractive he found her.").[5] Second, as to severity, Plaintiff's allegations that Thom-

**5.** *See also Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir.1997) (finding four alleged comments demeaning towards women

not sufficiently pervasive); *Rizkalla v. Eng'g, Mgmt. & Integration, Inc.*, No. CIVA 1:05–

as told Plaintiff that "she was in his closet," and—drawing all reasonable inferences in Plaintiff's favor—complimented Plaintiff's appearance in a sexually-tinged way on two occasions are on the lower end of the spectrum of severity. *See, e.g., Singleton,* 115 Fed.Appx. at 120, 122; *Harris v. Leopold,* No. CIV. CCB–12–0829, 2013 WL 1124972, at *4 (D.Md. Mar. 18, 2013) (unpublished) (holding that "making comments about female employees' attire, while arguably sexist, [was] not sufficiently serious to support a claim of hostile work environment").[6] Third, Plaintiff has not alleged that Thomas engaged in any "physically threatening or humiliating" conduct towards Plaintiff. *See Boyer–Liberto,* 786 F.3d at 277; *Webb–Edwards v. Orange Cnty. Sheriff's Office,* 525 F.3d

957, 2006 WL 4459434, at *12–13 (E.D.Va. Aug. 29, 2006) (finding that conduct the plaintiff alleged was insufficiently severe or pervasive, despite allegations that two employees made comments about the plaintiff's appearance), *aff'd,* 222 Fed.Appx. 262 (4th Cir.2007); *Lorenz v. Fed. Express Corp.,* No. 7:10–CV–00487, 2012 WL 4459570, at *8 (W.D.Va. Aug. 17, 2012) (allegations of "occasional comments on [the plaintiff's] appearance or cat calls made in her general direction; occasional lewd gestures, some of which were not directed at [the plaintiff]; male co-workers engaging in horseplay of a somewhat sexual nature; occasional instances of unwanted physical contact, including hugging and being pressed up against by a male co-worker on more than one occasion," "spread over a period of several months" were insufficient to establish a hostile work environment); *cf. R & R Ventures,* 244 F.3d at 340 (emphasis added) (holding that employee's actions involving, *inter alia,* "[o]n *almost a daily basis.* ... comment[ing] on [an employee's] buttocks and breasts, ask[ing] [another employee] what size pants she wore, and ma[king] inappropriate sexual remarks" created a triable issue of fact as to whether the conduct was severe or pervasive enough to create an abusive working environment); *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 243 & n. 6 (4th Cir.2000) (emphasis added) (finding triable issue of fact regarding whether conduct was severe or pervasive enough to create an abusive working

1013, 1027 (11th Cir.2008) (finding that comments about the plaintiff's appearance, though taunting and boorish, were not physically threatening or humiliating). Fourth, Plaintiff has not alleged sufficient facts to establish that Thomas's three comments "unreasonably interfere[d] with [Plaintiff's] work performance." *Boyer–Liberto,* 786 F.3d at 277.

Importantly, indicia of the sort of harassment that the Fourth Circuit has found particularly serious are absent from Plaintiff's complaint. In evaluating whether a plaintiff has demonstrated that a reasonable person in the plaintiff's position could conclude that severe or pervasive conduct created an abusive working environment, the Fourth Circuit has under-

environment based on evidence of "*repeated remarks* that belittled [the plaintiff] because she was a woman," including *at least twelve remarks,* and physically threatening remarks towards the plaintiff.).

**6.** *See also Rivera v. Prince William Cnty. Sch. Bd.,* No. 1:09cv341 (GBL), 2009 WL 2232746, at *2, *5 (E.D.Va. July 22, 2009) (unpublished) (allegations that an employee made comments about the plaintiff's sexual relationship with her husband, "asked her if she would wear lingerie for him or her husband," "frequently used sexual innuendo referring to male genitalia" during conversations, and "sent her at least one email containing sexual comments and/or sexual innuendo" were insufficiently severe to create a hostile work environment); *cf. Walker v. Mod–U–Kraf Homes, LLC,* 775 F.3d 202, 205, 208 (4th Cir.2014) (coworkers making sexually explicit comments toward the plaintiff while grabbing themselves and explicitly referencing sexual activities was sufficiently severe or pervasive conduct); *Ocheltree,* 335 F.3d at 333 (holding that a reasonable jury could conclude that an incident involving a "vulgar song and picture, and [ ] graphic descriptions of sexual activity (especially oral sex) that consistently painted women in a sexually subservient and demeaning light were sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and to create an abusive work environment").

scored the seriousness of: propositioning the plaintiff to engage in sexual activity, e.g., *Okoli v. City of Balt.*, 648 F.3d 216, 221 (4th Cir.2011); *Fairbrook Med. Clinic,* 609 F.3d at 330, and a harasser physically touching the plaintiff, e.g., *Okoli,* 648 F.3d at 221; *see also* 1 Barbara T. Lindemann et al., *Employment Discrimination Law* 20–42 to –43 & n. 158 (5th ed.2012) (noting that "[i]n particular, the EEOC has said that the unwelcome, intentional touching of 'intimate bodily areas' is sufficiently offensive, in and of itself, to alter the conditions of the working environment," and collecting cases). Likewise, the Fourth Circuit has emphasized that "[i]n measuring the severity of harassing conduct, the status of the harasser may be a significant factor" because "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." *Boyer–Liberto,* 786 F.3d at 278 (citations and internal quotation marks omitted); *cf. Jennings v. Univ. of N.C.,* 482 F.3d 686, 697 (4th Cir.2007) (noting that "disparity in power" is a significant factor). Here, Plaintiff's complaint is devoid of any allegations that Thomas propositioned Plaintiff to engage in sexual activity, physically touched Plaintiff, or harassed Plaintiff while he was Plaintiff's supervisor or in a

position of power vis-à-vis Plaintiff. The Court is mindful that the absence of such factors is in no way dispositive of whether a reasonable person in Plaintiff's position could conclude that Thomas's actions were sufficiently severe or pervasive to create an abusive working environment. *See R & R Ventures,* 244 F.3d at 339–40. However, such factors are an essential part of the Court's assessment of whether the totality of the circumstances of harassment that Plaintiff has alleged would lead a reasonable person to conclude that Thomas had subjected Plaintiff to a hostile or abusive work environment. When considered in conjunction with the other factors discussed above, the Court finds that the absence of allegations regarding sexual propositions, physical touching, or supervisory harassment indicates that Plaintiff has failed to allege sufficient facts to permit the reasonable inference that a reasonable person in Plaintiff's position could conclude that Thomas's conduct created a hostile or abusive working environment.[7] Accordingly, Plaintiff has failed to allege sufficient facts to satisfy the third element of a prima facie hostile work environment claim and, therefore, the Court will GRANT IN PART Defendants' motion to dismiss such claim.[8]

7. To be sure, drawing all reasonable inferences in Plaintiff's favor, Thomas's alleged comments towards Plaintiff, if true, were boorish and inappropriate. In particular, Thomas's actions in complimenting Plaintiff, while leering at her as she bent over a chart rack, cannot be condoned. But the Court must remain mindful of the Supreme Court's admonition that Title VII is not a "general civility code." *Oncale,* 523 U.S. at 81, 118 S.Ct. 998. The Court's disapproval of Thomas's alleged behavior does not save Plaintiff's otherwise—insufficient allegations regarding the third element of a hostile work environment claim.

8. The Fourth Circuit's recent decision in *Boyer–Liberto* does not alter the Court's conclusion with respect to Plaintiff's sexual harass-

ment claim. In *Boyer–Liberto,* where the plaintiff alleged a hostile work environment predicated on race, the plaintiff had presented evidence that a supervisory employee, twice within a two-day period, used an odious racial slur against the plaintiff. 786 F.3d at 278–80. Sitting en banc, the Fourth Circuit held that such harassment, though isolated, was "extremely serious" and would permit a reasonable finder of fact to conclude that such conduct created a hostile or abusive work environment. *Id.* at 280–81. In support of her claim that Defendant subjected her to a hostile work environment based on her sex, Plaintiff has not alleged facts to establish that Thomas engaged in any acts of harassment that are on par with the seriousness of the harassment in *Boyer–Liberto.*

## B. Plaintiff's Retaliation Claim

Next, Defendants assert that Plaintiff has failed to state a retaliation claim upon which relief can be granted because she has failed to establish that she engaged in protected activity. Although Plaintiff reported Thomas's alleged acts of harassment to her supervisor, Cino, and Defendants' CEO, Ruble, in Defendants' view, Title VII did not proscribe Defendants from retaliating against Plaintiff for such reporting because Plaintiff's belief that Thomas had sexually harassed her was unreasonable.

In addition to its substantive provisions regarding discrimination, Title VII also proscribes retaliation. Title VII provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). The latter portion of Title VII's anti-retaliation provision is commonly referred to as the "participation clause;" the former, the "opposition clause." Lindemann et al., *supra*, at 15–3. Only the opposition clause is at issue here.

 "To establish a prima facie case of retaliation ..., a plaintiff must prove (1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer–Liberto*, 786 F.3d at 281 (citations and internal quotation marks omitted). With respect to the first element, under the opposition clause, "[e]mployees engage in protected oppositional activity when, inter alia, they 'complain to their superiors about suspect-

ed violations of Title VII.'" *Id.* (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543–44 (4th Cir.2003)). Moreover, "[i]n the context of element one of a retaliation claim, an employee is protected when she opposes 'not only ... employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful.'" *Id.* at 282 (alteration in original) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir.2005)). In short, to satisfy the first element of a *retaliation* claim, a plaintiff that complained, to her employer, of a suspected hostile work environment is held to a lesser standard than a plaintiff that files a hostile work environment discrimination action. *See id.* at 285–86. The hostile work environment plaintiff must establish the existence of an actual objectively hostile or abusive work environment, but the retaliation plaintiff need not make such showing. Instead, a retaliation plaintiff has satisfied her burden if she alleges facts sufficient to permit a reasonable inference that she *reasonably believed* there was a hostile work environment in progress, even if her allegations do not permit a reasonable inference that an objectively hostile or abusive work environment actually existed. *See id.*

In *Boyer–Liberto*, the Fourth Circuit set forth the standard a court must apply in assessing whether a plaintiff possessed a reasonable belief that an isolated incident of harassment constituted unlawful discrimination. The court held:

> an employee is protected from retaliation for opposing an isolated incident of harassment when she reasonably believes that a hostile work environment is in progress, with no requirement for additional evidence that a plan is in motion to create such an environment or that such an environment is likely to occur. The employee will have a reasonable belief that a hostile environment

is occurring if the isolated incident is physically threatening or humiliating." *Boyer–Liberto*, 786 F.3d at 284.

In adopting that standard, the Fourth Circuit rejected the court's panel decision in *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir.2006). The *Jordan* court had ruled that, in cases involving a complaint about an isolated incident of harassment, an employee "cannot have possessed a reasonable belief that a Title VII violation was in progress, absent evidence 'that a plan was in motion to create such an environment' or 'that such an environment was [otherwise] likely to occur.'" *Id.* at 282 (alteration in original) (quoting *Jordan,* 458 F.3d at 340). However, in *Boyer–Liberto*, the court found that the *Jordan* standard "is at odds with the hope and expectation that employees will report harassment early, before it rises to the level of a hostile environment." *Id.* at 282.

In particular, the court suggested that *Jordan* was inconsistent with the standards applicable to establishing an employer's liability under Title VII, namely the *Faragher/Ellerth* defense and the fourth element of a coworker harassment hostile work environment claim. The court noted that, in *supervisory* harassment cases where the employer has taken no tangible employment action, the Supreme Court has established the *Faragher/Ellerth* affirmative defense. *Id.* Under such defense an employer can avoid liability by establishing that the plaintiff unreasonably failed "'to take advantage of any preventive or corrective opportunities provided by the employer.'" *See id.* (quoting *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275). And "if an employee fails to assert an internal complaint of sexual harassment, courts typically find the employee unreasonably failed to take advantage of the preventative or corrective opportunities provided by the employer." Lindemann et al., *supra*, at 20–88. Similarly, in cowork-

er harassment cases, although the *Faragher/Ellerth* affirmative defense is inapplicable, Title VII places on a plaintiff the obligation to demonstrate negligence on the part of her employer in allowing the harassment to occur. Accordingly, "the victim of a co-worker's harassment is prudent to alert her employer in order to ensure that, if the harassment continues, she can establish the negligence necessary to impute liability." *Boyer–Liberto*, 786 F.3d at 282. Thus, in both supervisory and coworker harassment cases, the court noted that Title VII encourages an employee to report harassment early. *See id.* In the former cases, early reporting is essential for an employee to defeat the *Faragher/Ellerth* defense by showing that the plaintiff took advantage of preventative or corrective opportunities; the latter, to establish that the defendant was aware of a coworker's harassment of the plaintiff, yet negligently failed to remedy such abuse. However, the *Boyer–Liberto* court observed that *Jordan*, "rather than encourage the early reporting vital to achieving Title VII's goal of avoiding harm," "deter[ed] harassment victims from speaking up by depriving them of their statutory entitlement to protection from retaliation." *Id.* at 283. Put differently, by limiting the circumstances in which a belief of an ongoing hostile work environment would be deemed reasonable, *Jordan* discouraged employees from reporting harassment at its inception.

In the *Boyer–Liberto* court's view, *Jordan* placed a victim of alleged harassment in a Catch–22. If she reported discrimination too early, that is, before there was evidence that "'a plan was in motion to create such an environment'" or "'that such an environment was [otherwise] likely to occur,'" *id.* at 282 (quoting *Jordan*, 458 F.3d at 340), her belief that it constituted a hostile work environment would be unreasonable, and the employer could retaliate

against her because she would be unable to establish the first element of a retaliation claim. On the other hand, if she waited until more harassment had occurred to report the harassment, in a supervisory harassment case, she risked the possibility that the *Faragher/Ellerth* defense would bar her claim because she unreasonably failed to take advantage of an employer's preventative or corrective opportunities. *See id.* at 283. Likewise, in a coworker case, she risked the possibility that she might be unable to establish that her employer was aware of the harassment and, therefore, that she would fail to demonstrate negligence on the part of her employer. *See id.* Consequently, the court found *Jordan* inconsistent with the expectation, under Title VII, that an employee promptly will report harassment. *See id.* at 283–84.

█ At this stage, although it is a close case, the Court finds that Plaintiff has alleged sufficient facts to survive Defendants' motion to dismiss her retaliation claim. To begin, even if the Court were to construe the three alleged incidents as "isolated incidents," Plaintiff has not alleged sufficient facts to satisfy *Boyer–Liberto*'s standard concerning isolated incidents of harassment because her allegations *do not* permit the Court to reasonably infer that any of Thomas's actions were physically threatening or humiliating. *See id.* at 283–84. However, unlike *Boyer–Liberto*, Plaintiff has alleged three discrete incidents of alleged harassment. First, Plaintiff alleges that, in the middle of November, Thomas told Plaintiff "she was in his closet." First Am. Compl. ¶ 9. Although the Court has difficulty determining the extent to which such comment was "of a sexual nature," Plaintiff's allegation that Thomas, while talking about Plaintiff, later "boast[ed] about [making] inappropriate sexual comments," could suggest that the closet remark had some sexual undertone. According to Plaintiff, following the "she was in his closet" statement, either that same month or the next month, Thomas told Plaintiff that "[y]ou look nice in that blouse." *Id.* ¶ 10. Such compliment of Plaintiff's appearance ordinarily might be perfectly acceptable. However, when considered in combination with the allegation of Thomas's boasting regarding "inappropriate sexual comments," even more so than the closet remark, Thomas's comment about Plaintiff's appearance might reasonably be interpreted as having a sexual connotation. As the last act of alleged harassment, Plaintiff alleges that Thomas, in the same month as, or the next month after, his prior two comments, not only commented about Plaintiff's appearance again, but did so while "leering" at her as she was bending over a chart rack. *See id.* ¶ 11. Given that this third incident, as alleged, involved "leering" at Plaintiff, when the two prior incidents had not, a reasonable person in Plaintiff's position might believe that it was an escalation of the two prior allegedly harassing incidents. Considering the three alleged incidents of harassment together, and the increasingly sexual nature of Thomas's comments—from a comment about his closet, to a comment about Plaintiff's appearance, to a comment about Plaintiff's appearance while leering at her—a reasonable person in Plaintiff's position might believe that Thomas was harassing her in an escalating manner. Viewing Plaintiff's allegations as a whole, and cognizant of the importance of prompt reporting within the remedial scheme of Title VII, assuming the truth of the allegations that Thomas made comments about Plaintiff's appearance on at least two occasions and with an increasingly sexual undertone, the Court concludes that a reasonable person in Plaintiff's position might have believed that Thomas's behavior had cre-

ated a hostile or abusive work environment. Accordingly, though Plaintiff has failed to allege facts permitting a reasonable inference that Thomas, in fact, had created a hostile or abusive work environment, *see supra* Part III.A, Plaintiff has alleged facts sufficient to permit a reasonable inference that a reasonable person in Plaintiff's position could have *believed* that Thomas's behavior had created a hostile or abusive work environment. *Cf. Young v. Giant Food Stores, LLC,* 108 F.Supp.3d 301, 316–17, No. PWG–14–2006, 2015 WL 3556009, at *11 (D.Md. June 8, 2015). Thus, Plaintiff has sufficiently pleaded that she engaged in oppositional activity, and the Court will **DENY IN PART** Defendants' motion to dismiss her retaliation claim.[9]

In light of the Court's ruling, a brief explanation may be in order to reiterate why Plaintiff has failed to state a claim with respect to her hostile work environment claim, but *has* stated a retaliation claim upon which relief can be granted. At first blush, it may seem incongruous to hold that Thomas's actions were *insufficiently* severe or pervasive to allow a reasonable person in Plaintiff's position to believe that such actions had created a hostile or abusive work environment, while simultaneously holding that Plaintiff's belief that Thomas's actions had created an actionable hostile work environment was reasonable. If a reasonable person could not have found Thomas's conduct to be severe or pervasive enough to create a hostile or abusive work environment, how could Plaintiff reasonably believe that such an environment existed? The twofold remedial scheme of Title VII answers that question.

In Title VII, Congress and the President sought to prevent two distinct, though related, harms: discrimination because of

race, color, religion, sex, or national origin and retaliation against an employee who has sought "to secure or advance enforcement" of Title VII's protection against such discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 63, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *see also* 42 U.S.C. §§ 2000e–2(a), 2000e–3(a). The substantive, antidiscrimination provision of Title VII "seeks to prevent injury to individuals based on who they are, *i.e.,* their status." *Id.* "The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.,* their conduct." *Id.* Moreover, as with antiretaliation provisions in other statutes, the primary purpose of such provision is to "[m]aintai[n] unfettered access to [the] statutory remedial mechanisms" that Title VII created. *Id.* at 64, 126 S.Ct. 2405 (first alteration in original) (internal quotation marks omitted) (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). Thus, the Supreme Court has recognized that Title VII's antidiscrimination and antiretaliation provisions serve different purposes. *See id.* at 63, 126 S.Ct. 2405. And, perhaps unsurprisingly, they also impose different standards. *Cf. id.* at 64, 126 S.Ct. 2405 (based on the text and purposes of Title VII, holding that, in determining whether a defendant has taken an adverse employment action, the antiretaliation provision proscribed conduct that "unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). As noted above, a plaintiff that seeks the protection of Title VII's antiretaliation provision by alleging that her employer retaliated against her for opposing a hostile work environment is held to a *lesser* standard than a plaintiff that seeks relief under Title VII's antidiscrimination

9. The Court notes that Defendants only challenged the sufficiency of Plaintiff's pleading

with respect to one element of the retaliation claim. . .

provision by alleging that her employer actually discriminated against her through a hostile work environment. *See Boyer–Liberto,* 786 F.3d at 282–83. To satisfy the protected activity element of a retaliation claim, a retaliation plaintiff need only establish a reasonable belief that an employment practice is unlawful, whereas a hostile work environment plaintiff must establish that an employer engaged in an actual unlawful employment practice. *See id.* Therefore, the quantum of severe or pervasive conduct that a retaliation plaintiff must allege to establish that she reasonably believed a hostile work environment was in progress is less than that which a hostile work environment plaintiff must allege to carry her burden of demonstrating that objectively severe or pervasive conduct created an actual hostile or abusive work environment. By permitting a retaliation plaintiff to maintain an action based on a *reasonable*—even if mistaken—belief that her employer engaged in an unlawful employment practice, the Fourth Circuit necessarily has determined that, in at least some instances, Title VII's *antiretaliation* provision will protect an employee's opposition to a work environment that would not support a separate claim under Title VII's *antidiscrimination* provision. As the above analysis reflects, this is one such case.

Here, the different standards applicable to Title VII's antidiscrimination and antiretaliation provisions—namely, the *lesser,* reasonable belief standard to which a retaliation plaintiff is held with respect to showing opposition to an unlawful employment practice—compel different decisions regarding the sufficiency of the pleading of Plaintiff's hostile work environment and retaliation claims. Although Plaintiff's hostile work environment and retaliation claims both focus on Thomas's conduct, the different standards applicable to discrimination and retaliation claims require the Court to view such allegations from a different lens vis-à-vis each claim. If Plaintiff relied solely on Title VII's antidiscrimination protection, her claim, as pleaded, would fail because Plaintiff has not plausibly alleged that Thomas's actions were objectively severe or pervasive enough to create a hostile or abusive work environment. *See* supra Part III.A. However, in Title VII, Congress and the President did not end with Title VII's proscription on discrimination because of sex. To secure their objective of a workplace free from such discrimination, they included the antiretaliation provision as part of Title VII's remedial scheme. *See White,* 548 U.S. at 63, 126 S.Ct. 2405. And interpreting such provision broadly to protect an employee who complains to her employer about perceived hostile work environment harassment arguably comports with: the purposes of the antiretaliation provision, maintaining "unfettered access" to Title VII's remedial mechanisms, *id.* at 64, 126 S.Ct. 2405; the general purpose of Title VII, "not to provide redress but to avoid harm," *Faragher,* 524 U.S. at 775, 118 S.Ct. 2275; and the Fourth Circuit's command that a victim promptly report harassment if she wishes to recover under Title VII, *see Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 269–70 (4th Cir.2001); *Barrett v. Applied Radiant Energy Corp.,* 240 F.3d 262, 267–68 (4th Cir. 2001). In this case, under the standard applicable to retaliation claims, Thomas's alleged actions would have permitted Plaintiff to reasonably believe Defendants were subjecting her to an abusive work environment, though Thomas's actions as alleged, independent of any alleged retaliation, did not create an actual hostile work environment.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Partially

Dismiss Amended Complaint, ECF No. 10. The Court **GRANTS** such motion as to Plaintiff's hostile work environment claim and **DISMISSES** such claim. The Court **DENIES** Defendants' motion with respect to Plaintiff's retaliation claim.

Counsel for the parties are **DIRECTED** to contact the docket clerk, at 757–222–7213, within seven (7) days after the entry of this Opinion and Order to schedule a Rule 16(b) pretrial conference.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**