**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1152**

MAGALY HERNANDEZ,

Plaintiff - Appellant,

v.

FAIRFAX COUNTY,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony John Trenga, District Judge. (1:16-cv-00502-AJT-MSN)

Argued: December 5, 2017                    Decided: January 30, 2018

Before KEENAN, DIAZ, and HARRIS, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

Ellen Kyriacou Renaud, SWICK & SHAPIRO, P.C., Washington, D.C., for Appellant. Jamie Marie Greenzweig, FAIRFAX COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Magaly Hernandez, a female firefighter employed by Fairfax County, Virginia (the County), appeals from the district court's award of summary judgment in favor of the County in her action alleging a hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e through 2000e-17. After reviewing the record of proceedings in the district court, we conclude that there are genuine disputes of material fact with respect to both of Hernandez's claims.[1] We therefore vacate the district court's judgment and remand for further proceedings.

I.

We construe the evidence in the light most favorable to Hernandez, the nonmoving party, and draw all reasonable inferences in her favor. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 150 (4th Cir. 2012) (citation omitted). For more than 10 years, Hernandez has worked as a firefighter with the Fairfax County Fire and Rescue Department. In October 2013, she began working at Fire Station 42 where Jon Bruley was the station captain. Bruley, in turn, reported to Cheri Zosh, who served as a battalion chief.

Within the first few months of Hernandez's work at Fire Station 42, Bruley engaged in inappropriate conduct toward her, including blocking her path in the hallway,

---

[1] Although Hernandez alleged two counts relating to sexual harassment and hostile work environment, the district court correctly treated these counts as one interrelated count. Hernandez has not challenged this construction of her complaint.

placing his chin on her shoulder, and positioning his body "right up against" her. Bruley engaged in this conduct despite Hernandez's repeated requests that she did not "like people that close to [her.]" Bruley also made several statements to Hernandez indicating his desire to see her in a bathing suit, and once asked Hernandez whether she would "be able to handle that big hose," a comment that Hernandez construed as being sexual in nature.

When Hernandez first reported this conduct to Zosh in April 2014, Zosh confronted Bruley directly. After speaking with Zosh, Bruley did not again make inappropriate comments to Hernandez or physically invade her personal space. Nevertheless, Bruley began monitoring and tracking Hernandez's activities and movements at work, and this behavior continued for many months. Hernandez later filed a formal complaint with the County's equal rights office.

After Hernandez transferred to a different fire station, she was involved in a verbal confrontation with a male firefighter during a basketball game at the station (the basketball incident). The disagreement arose after the male firefighter aggressively and repeatedly threw a basketball at an unsteady backboard, disregarding Hernandez's requests to stop. Based on this incident, the County conducted an investigation and later issued Hernandez a written reprimand for workplace violence and unbecoming conduct. The reprimand stated that during the verbal confrontation, Hernandez exhibited "aggressive" behavior by "challeng[ing] the [male] firefighter verbally," and by "violating his body space with [her] aggressive head and arm gestures."

3

In June 2016, Hernandez filed an amended complaint in the district court under Title VII alleging a hostile work environment based on sexual harassment and discrimination and a separate claim of retaliation. After the County filed a motion for summary judgment and the district court held a hearing, the court determined that Hernandez had failed to satisfy her burden of proof for either claim. Hernandez now appeals.

## II.

We review the district court's award of summary judgment de novo. *Rosetta Stone Ltd.*, 676 F.3d at 150. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

We begin by addressing Hernandez's hostile work environment claim. Title VII states that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] . . . terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). Because an employee's work environment is a term or condition of employment, harassment based on sex is actionable under Title VII. *See EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986)). To succeed on a hostile work environment claim based on sexual harassment, a plaintiff must show that the offensive conduct (1) was unwelcome, (2) was based on her sex, (3)

was "sufficiently severe or pervasive to alter [her] conditions of employment and to create an abusive work environment," and (4) was imputable to her employer. *Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 354 (4th Cir. 2013) (citation omitted).

Like the district court, we initially conclude that Hernandez satisfied the first two factors of her hostile work environment claim. Accordingly, we focus our analysis on the remaining issues whether Bruley's offensive conduct was sufficiently severe or pervasive, and whether his conduct was imputable to the County. We address these factors in turn.

i.

Hernandez argues that Bruley's harassing conduct threatened her physical safety and humiliated her to such a degree that a jury could conclude that Bruley's conduct created a hostile work environment. In response, the County contends that Bruley's conduct, while offensive, was too insignificant to support Hernandez's claim when viewed objectively. Further, the County submits that Hernandez's "near total lack of awareness" regarding Bruley's monitoring of Hernandez's activities further supported the district court's conclusion that Bruley's conduct was legally insufficient to support the claim of a hostile work environment. We disagree with the County's position.

A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In assessing the

5

legal sufficiency of a plaintiff's claim, we focus on whether the work environment, when viewed both subjectively and objectively, can be perceived as being hostile or abusive. *See id.* (citing *Harris*, 510 U.S. at 22). "Whether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiff's position." *Id.* (internal quotation marks and citation omitted). Our inquiry requires consideration of "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Okoli v. City of Balt.*, 648 F.3d 216, 222 (4th Cir. 2011) (internal quotation marks and citation omitted).

The district court concluded that a reasonable jury could determine that for about one year, Hernandez subjectively felt humiliated every day at work, felt pressure not to report the harassing conduct, and felt fearful of Bruley's "inappropriate, boorish, insensitive, and demeaning" behavior. However, the court held that Bruley's conduct, from an objective perspective, was not sufficiently severe or pervasive to support Hernandez's claim.

We reach a contrary conclusion and hold that the full record of Bruley's conduct could support a jury determination that, viewed objectively, Hernandez was subjected to a hostile work environment based on her sex. In less than one year, Bruley physically invaded Hernandez's personal space on numerous occasions and made sexually suggestive comments to her. Bruley also informed various colleagues that he suspected that Hernandez and Zosh were engaged in an inappropriate sexual relationship. Bruley

6

repeated his offensive actions despite the fact that Hernandez repeatedly asked him to stop this conduct.

Also, importantly, we consider evidence of the extent to which Hernandez knew that Bruley was continuing to monitor her movements and activities. Hernandez was aware before she transferred to another station that Bruley "started tracking what [she] was doing at the station, who [she] was talking to, how [she] was doing certain things, who [she] was giving hugs to." After Hernandez transferred to a different fire station, other employees informed her that Bruley continued to monitor her and knew when she was working. The record additionally showed that Bruley compiled multiple binders with information he had collected about Hernandez.

In view of the full range of Bruley's offensive conduct, we hold that a reasonable jury could conclude that Bruley's actions, when viewed objectively, created a hostile and abusive work environment. Accordingly, the record shows disputed issues of material facts regarding the question whether Bruley's conduct was sufficiently pervasive and severe to support Hernandez's claim.

ii.

We turn to consider the issue whether Bruley's conduct was imputable to the County. Hernandez argues that there are disputed questions of fact regarding whether the County disciplined Bruley in a reasonable manner for his harassing conduct. The County, however, contends that the record conclusively shows that the County took prompt and appropriate disciplinary action against Bruley upon learning of Hernandez's allegations. We again disagree with the County's position.

7

An employer will be liable for an employee's harassing conduct of another employee when the employer had actual or constructive knowledge of the hostile work environment. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008). "Once the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment." *Id.* (internal quotation marks and citation omitted).

The district court correctly observed that when Hernandez first reported Bruley's harassing conduct in April 2014, Zosh immediately addressed the concerns with Bruley. After this meeting, Bruley's physically intimidating behavior and inappropriate comments toward Hernandez ceased. However, a jury could determine that the County's later responses to Bruley's continued inappropriate conduct were inadequate. During the County's investigation into Hernandez's equal rights complaint against Bruley, the County became aware that Bruley had been monitoring Hernandez's activities. Nevertheless, the County did not review Bruley's binders of notes regarding Hernandez's activities.

Between August and November 2015, when supervisors discussed with Bruley his conduct of tracking Hernandez's movements, those supervisors generally told Bruley to "focus on his work." Bruley interpreted his supervisors' comments as permitting his continued documentation of Hernandez as needed to support his own complaint of discrimination. In fact, the County did not specifically direct Bruley to "cease any tracking" of Hernandez until March 3, 2015. At that point, Bruley received a written reprimand and was threatened with termination.

8

On this record, a reasonable jury could conclude that the County's responses prior to the March 2015 reprimand were inadequate and were not reasonably calculated to end the harassing conduct. Thus, we conclude that the district court erred in determining as a matter of law that Bruley's conduct was not imputable to the County. Accordingly, because disputed issues of fact exist regarding whether Bruley's harassment (1) was sufficiently severe and pervasive and (2) was imputable to the County, we hold that the district court erred in awarding summary judgment to the County on Hernandez's hostile work environment claim.

B.

Finally, we consider Hernandez's claim of retaliation. Hernandez contends that a jury could determine that the County issued her a written reprimand after the basketball incident because of her complaints about Bruley. The County argues in response that Hernandez's inappropriate conduct during the basketball incident was the basis for the written reprimand, negating any basis for a finding of retaliation. We disagree with the County's arguments.

Under Title VII, it is unlawful to discriminate against an employee because she has opposed any unlawful employment practice or because she has made a charge or has participated in an investigation. 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation requires proof that: (1) the plaintiff engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 251-53 (4th Cir. 2015) (explaining that *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.

9

Ct. 2517 (2013), did not heighten the causation standard for a prima facie case involving indirect evidence of retaliation, and that the "but for" standard applies only to rebut a defendant's showing of pretext).

The district court correctly concluded that Hernandez engaged in protected activity under Title VII when (1) she made her initial report to Zosh regarding Bruley's conduct, and (2) she filed her official complaint with the County in August 2014. We also agree with the district court's determination that the written reprimand issued in June 2015, which would remain on Hernandez's permanent record for three years and rendered her ineligible for any promotions for at least one year, qualifies as an adverse employment action. Thus, we turn to focus on the question whether there was a causal connection between the protected activity and the adverse employment action.

At the outset, we observe that the written reprimand Hernandez received for "[w]orkplace violence" and "unbecoming conduct" arose from a verbal disagreement. On its face, the severity of the reprimand appears disproportionate to the brief, non-physical altercation. The County employee who investigated the basketball incident described it as "minor" when compared with other altercations between firefighters that he had investigated in the past.

Furthermore, the basketball incident and following investigation took place about four months after Hernandez had filed a formal complaint with the County's equal rights office. Although this length of time might not be sufficient on its own to establish a causal connection, we conclude that based on the relative severity of the reprimand, its timing, and the other evidence in the record leading up to Hernandez's protected activity,

10

a reasonable jury could determine that the County retaliated against Hernandez.[2] Accordingly, we conclude that there are disputed issues of material fact with respect to Hernandez's retaliation claim against the County.

III.

For these reasons, we vacate the district court's award of summary judgment to the County and remand for further proceedings.

*VACATED AND REMANDED*

---

[2] We also observe that the record presents disputed issues of fact regarding whether the County's proffered non-retaliatory reasons for the reprimand were pretextual. *See Foster*, 787 F.3d at 252 (discussing the burden-shifting framework applicable in cases involving indirect evidence of retaliation).